IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHIC OPTIC, INC., and | § | |
| CONTOUR OPTIK, INC., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:00-CV-2010-L |
| | § | |
| | § | |
| E'LITE OPTIK, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are: the Findings, Conclusions, and Recommendations of the United States Magistrate Judge, filed August 30, 2006; Objections to the Magistrate Judge's Proposed Findings and Claim Construction by Defendant E'Lite Optik, Inc., filed September 12, 2006; Plaintiffs' Response to Defendant E'Lite's Objection to the Magistrate Judge's Findings, Conclusion, and Recommendations on Claim Construction, filed September 25, 2006; and Reply Brief in Support of Objections to the Magistrate Judge's Proposed Findings and Claim Construction by Defendant E'Lite Optik, Inc., filed October 6, 2006.

Having carefully considered the Findings, Conclusions, and Recommendations of the United States Magistrate Judge, Defendant E'Lite Optik, Inc.'s objections, Plaintiffs' Response to Defendant's objections, Defendant's reply to Plaintiffs' response, record, and applicable law, for the reasons set forth below, the court determines that the magistrate judge's findings and conclusions are correct. Accordingly, the court **accepts** them as those of the court.

## I. Factual and Procedural Background

This is a patent infringement lawsuit. On August 29, 2000, the United States Patent and Trademark Office ("PTO") issued United States Patent No. 6,109,747 ("the '747 Patent"), which names David Chao as the inventor and Plaintiff Contour Optik, Inc. ("Contour") as the assignee of an invention relating to an eyeglass frame with an auxiliary frame and lenses. Plaintiff Chic Optic, Inc. ("Chic Optic") is an exclusive licensee of the invention. Chic Optik in turn granted a sublicense to Aspex Eyewear ("Aspex"). On September 13, 2000, Contour, Chic Optic, and Aspex[1] filed this lawsuit against Defendant E'Lite Optik, Inc. ("Defendant"), alleging infringement on the '747 Patent. E'Lite has counterclaimed seeking, among other things, a declaration that it is not infringing the '747 Patent and that the '747 Patent is invalid and unenforceable.

The parties filed a joint claim construction statement on November 23, 2005, followed by extensive briefing, seeking construction of six terms in the '747 Patent. Pursuant to a standing order of reference, on June 30, 2006, this case was referred to United States Magistrate Judge Irma C. Ramirez for a claim construction hearing. The magistrate judge held a claim construction hearing on July 21, 2006. On August 30, 2006, the magistrate judge filed her Findings, Conclusions and Recommendations (hereinafter "Report and Recommendation"). On September 12, 2006, Defendant filed Objections to the Magistrate Judge's Proposed Findings and Claim Construction. On September 25, 2006, Plaintiffs filed their Response to Defendant E'Lite's Objection to the Magistrate Judge's Findings, Conclusions, and Recommendations on Claim Construction. On October 6, 2006, Defendant filed its Reply Brief in Support of Objections to the Magistrate Judge's Proposed Findings and Claim Construction.

---

[1] Pursuant to an order dated August 26, 2003, the court dismissed Plaintiff Aspex Eyewear for lack of standing.

## II. Legal Standard

Patent infringement is the unauthorized making, using, selling, offering to sell, or importing into the United States of any patented invention during the term of the patent. 35 U.S.C. § 271(a). Patent infringement analysis involves two steps. In the first step the court determines the proper construction of the patent claims by establishing, as a matter of law, the scope and boundaries of the subject matter that is patented. *See Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370, 384-85 (1996). In the second step the trier of fact compares the properly construed claims to the allegedly infringing device(s) and determines whether there has been an infringement. *Id.* The issue before the court at this time is construction of various claims of the '878 patent.

"'Claim construction' is the judicial statement of what is and is not covered by the technical terms and other words of the claims." *Netword, LLC v. Central Corp.,* 242 F.3d 1347, 1352 (Fed. Cir. 2001). *See also United States Surgical Corp. v. Ethicon, Inc.,* 103 F.3d 1554, 1568 (Fed. Cir.), *cert. denied*, 522 U.S. 950 (1997). The claims of a patent are the numbered paragraphs at the end of the patent that define the scope of the invention and thus the scope of the patentee's right to exclude others from making, using, or selling the patented invention. *See Astrazeneca AB v. Mutual Pharmaceutical Co.,* 384 F.3d 1333, 1336 (Fed. Cir. 2004).

"[T]he words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005), *cert. denied*, 546 U.S. 1170 (2006) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Ordinary and customary meaning is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention[.]" *Id.* at 1313. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay

judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. When the ordinary and customary meaning of a term is not readily apparent, "the court looks to 'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.'" *Id.* (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)). "Those sources include the words of the claims themselves, the [patent] specification, the prosecution history, and extrinsic evidence." *Id.*

"The claims, of course, do not stand alone. Rather, they are part of 'a fully integrated written instrument,' consisting principally of a specification that concludes with the claims. For that reason, claims 'must be read in view of the specification, of which they are a part.'" *Id.* at 1315 (quoting *Markman*, 52 F.3d at 979). Section 112 of the Patent Act, 35 U.S.C. § 112, states that the specification:

> shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

35 U.S.C. § 112. "The specification 'is always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 (quoting *Vitronics*, 90 F.3d at 1582). "[T]he specification 'acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication.'" *Id.* at 1321 (quoting *Vitronics*, 90 F.3d at 1582).

In addition to the specification, the court should also consider the prosecution history, if it is in evidence, in determining the meaning of disputed claim terms. *Phillips*, 415 F.3d at 1317. The

prosecution history is part of the intrinsic record and consists of a complete record of all proceedings before the Patent and Trademark Office ("PTO"), including the prior art cited during the examination of the patent. *Phillips*, 415 F.3d at 1317. The prosecution history also includes any express representations made by the applicant regarding the scope of the claims. *Vitronics,* 90 F.3d at 1582. "[B]ecause the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips*, 415 F.3d at 1317. The prosecution history can, however, "often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.* (citing *Vitronics*, 90 F.3d at 1582-83).

Despite the Federal Circuit's emphasis on the importance of intrinsic evidence in claim construction, it has "also authorized district courts to rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" *Id.* (quoting *Markman,* 52 F.3d at 980). The Federal Circuit has observed that dictionaries and treatises can be "useful in claim construction[,]" particularly technical dictionaries which may help the court "'to better understand the underlying technology' and the way in which one of skill in the art might use the claim terms." *Id.* at 1318 (quoting *Vitronics*, 90 F.3d at 1584 n. 6). As stated by the Federal Circuit en banc in *Phillips*:

> Because dictionaries, and especially technical dictionaries, endeavor to collect the accepted meanings of terms used in various fields of science and technology, those resources have been properly recognized as among the many tools that can assist the court in determining the meaning of particular terminology to those of skill in the art of the invention.

*Id.* (citation omitted).

Extrinsic evidence through expert testimony may be useful to a court for a variety of reasons. *Id.* For example, it may:

> provide background on the technology at issue, [] explain how an invention works, [] ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or [] establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field.

*Id.* "[C]onclusory, unsupported assertions by experts as to the definition of a claim term[, however,] are not useful to a court. *Id.* "Similarly, a court should discount any expert testimony 'that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent.'" *Id.* (quoting *Key Pharms. v. Hercon Labs. Corp.,* 161 F.3d 709, 716 (Fed. Cir. 1998)).

Although extrinsic evidence can be useful in claim construction, "it is less significant than the intrinsic record in determining the legally operative meaning of claim language." *Id.* at 1317 (internal citations and quotations omitted). "[U]ndue reliance on extrinsic evidence poses the risk that it will be used to change the meaning of claims in derogation of the indisputable public records consisting of the claims, the specification and the prosecution history, thereby undermining the public notice function of patents." *Id.* at 1319 (citation and internal quotations omitted).

**III. Analysis**

The technology at issue pertains to back-mounting magnetic clip-on eyewear. The '747 patent issued with 13 claims describing different embodiments of the invention. Plaintiffs in this lawsuit are asserting only Claim 12 of the patent against Defendant. Claim 12 of the '747 patent, with the six claim elements in dispute highlighted, reads as follows:

> A ***primary frame*** adapted to support an ***auxiliary frame***, which includes a first bridge and two sides, each side having an extension and ***each extension including a rear end having a first flange extended downward***, each flange, itself not being a magnet, including a magnetic material, the ***primary frame*** comprising:
>
>> a second bridge; and
>>
>> two sides, each having a ***stud***, each ***stud*** including a magnetic material;
>>
>> wherein when the primary frame is supporting the auxiliary frame,
>>
>> each magnetic material of the primary frame magnetically engages in a lateral manner with one of the magnetic materials of the auxiliary frame for securing said auxiliary frame to said primary frame;
>>
>> ***each stud is extended over by one of the extensions, and can support that extension to prevent the auxiliary frame from moving downward relative to the primary frame***; and
>>
>> ***the flanges are located behind the studs to further secure the auxiliary frame to the primary frame***, and to reduce the likelihood of the auxiliary frame from being disengaged from the primary frame if the auxiliary frame is being pulled forward relative to the primary frame.

*See* Report and Recommendation at 6-7 (quoting '747 Patent, col. 5, lines. 38-43; Col. 6, lines. 1-19).

### A. The Magistrate Judge's Report and Recommendation

After carefully considering the parties' claim construction presentations, the legal briefing and applicable law, the magistrate judge recommended the following construction to the court:

- "*primary frame*" should be construed as "the lens rims (if provided), the nose bridge, the rim locks (if provided); and the studs, each of which includes a magnetic material";

- "*auxiliary frame*" should be construed as "the lens rims (if provided); the nose bridge; the extensions; and the first flanges, each of which each includes a magnetic material";

**Memorandum Opinion and Order - Page 7**

- "*each extension including a rear end having a first flange extended downward*" should be construed as "each extension includes a rear end, a portion of which reaches in a downward direction relative to the remaining portions of the extension and facilitates attachment of the auxiliary frame to the primary frame";

- "*stud*" should be construed as "those portions of each side of the primary frame which include a magnetic material and extend outwardly of the lenses or lens rims (if provided)";

- "*each stud is extended over by one of the extensions, and can support that extension to prevent the auxiliary frame from moving downward relative to the primary frame*" should be construed as "at least some portion of each of the extensions reaches above and across the corresponding stud, and is capable, with or without direct contact, of maintaining the corresponding extension in position so as to keep it from falling, sinking or slipping and thus prevent the auxiliary frame f[ro]m moving downward relative to the primary frame"; and

- "*the flanges are located behind the studs to further secure the auxiliary frame to the primary frame*" should be construed as "the flanges are located behind the studs to further secure the auxiliary frame to the primary frame, either through contact or magnetic attraction between the magnetic materials within the flanges and studs."

*Id.* at 20. The magistrate judge also recommended that the court adopt the following construction of claim terms agreed to by the parties in their Joint Claim Construction and Prehearing Statement, namely:

- "*adapted to support*" should be construed as "made for the purpose of supporting";

- "*extension*" should be construed as "a portion of the auxiliary frame that extends away from and rearwardly of the sides of the frame";

- "*support*" should be construed as "holds in position";

- "*supporting*" should be construed as "holding in position"; and

- "*two sides*" should be construed as "left-hand and right-hand portions of the respective frame."

*Id.* at 21.[2]

Plaintiffs filed no objections to the Report and Recommendation. Defendant has objected to the magistrate judge's recommended claim construction of the following disputed claim terms: "*each extension [of the auxiliary frame] including a rear end having a first flange extended downward*"; "*each stud is extended over by one of the extensions, and can support that extension to prevent the auxiliary frame from moving downward relative to the primary frame*"; and "*the flanges are located behind the studs to further secure the auxiliary frame to the primary frame*." Defendant has filed no objection to the magistrate judge's recommended claim construction of the disputed claim terms *"primary frame"*; *"auxiliary frame"*; and *"stud."* The court now addresses Defendant's objections.

---

[2]Plaintiffs had urged the magistrate judge to follow the claim construction in a district court opinion that previously construed the disputed terms in Claim 12 of the '747 Patent at issue in this case. *See* Report and Recommendation at 7 n.2 (citing *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 2003 U.S. Dist. LEXIS 26355 (C.D. Cal. 2003)). The magistrate judge "decline[d] to rely on those findings for this proposed construction as well as the other relevant constructions" for several reasons. First, she stated that "while similar claim terms were in dispute, the disputes among the parties over construction of those terms varied with respect to some of the terms." Second, she noted that while the *Miracle Optics* opinion provides reasons for rejecting the defendant's proposed construction in that case, it provided no reasons why the plaintiffs' proposed construction was correct. Finally, she stated that there is no requirement that the court defer to the *Miracle Optiks* opinion. *Id.* (citing *Aspex Eyewear v. Altair Eyewear, Inc.*, 386 F.Supp.2d 526, 535-36 (S.D.N.Y. 2005) (declining to defer to claim construction findings, including those in *Miracle Optiks*, based in part on its finding that it is the responsibility of the Federal Circuit, rather than individual district courts, to ensure uniformity in claim construction.)).

B. **Defendant's Objections**

1. **"each extension including a rear end having a first flange extended downward"**

Defendant objects to the magistrate judge's recommended construction of "each extension including a rear end having a first flange extended downward." To review, the magistrate judge recommended that this disputed element be construed as: "each extension includes a rear end, a portion of which reaches in a downward direction relative to the remaining portions of the extension and facilitates attachment of the auxiliary frame to the primary frame." *See* Report and Recommendation at 20. In recommending this claim construction, the magistrate judge rejected Defendant's argument that "the claim terms are clear enough and need no real construction, especially if it adds extra claim requirements." *Id.* at 11 (quoting Def. Resp. at 6). The magistrate judge essentially adopted the Plaintiffs' proposed construction of the term with the deletion of what she described as "extraneous language." *Id.* at 12.[3]

Defendant argues that the magistrate judge's recommended construction "significantly" broadens the "specific structural shape" of flange 23 illustrated in Figure 3 of the patent, because she recommends the use of the word "portion." *See* Def. Obj. at 16. According to Defendant, "redefining 'flange' under the guise of claim construction to mean a 'portion' having any shape 'which reaches in a downward direction relative to the remaining portions of the extension and facilitates attachment' impermissibly broadens Claim 12." Def. Reply to Pl. Resp. at 9-10. Defendant further objects to the magistrate judge's incorporation of functional language, namely,

---

[3] Plaintiffs recommended the following definition: "each extension including a rear end having a first flange extended downward" as "each extension includes a rear end having a portion of the extension which protrudes from the rear end thereof and facilitates attachment of the auxiliary frame to the primary frame and where such portion of the extension reaches in a downward direction relative to the remaining portions of the extension." *See* Def. Open. Br. at 10.

**Memorandum Opinion and Order - Page 10**

"facilitates attachment of the auxiliary frame to the primary frame," in her construction. Defendant argues that such use of the functional language is inconsistent with the claim language, since Claim 12 requires the flanges to be located behind the studs "to further secure the auxiliary frame to the primary frame," and such a requirement is different from merely "facilitating attachment" of the frames. Def. Obj. at 16. Based on these arguments, Defendant proposes the following definition: "each extension includes a rear end having a flange which extends in a downward direction relative to the remaining portions of the extension to further secure attachment of the auxiliary frame to the primary frame as required by other elements of the claim." *Id.* Defendant further states that its preference is to omit the "further secure" language. *Id.*

In response to Defendant's objections, Plaintiffs contend that the term "portion" used by the magistrate judge in her recommended claim construction "tracks Figure 3" very closely. Pl. Resp. at 7. "As shown in Figure 3, the flange 23 is the portion of the extension 22 located at its rear end; it extends downward relative to the rest of the extension; and it facilitates attachment of the auxiliary frame to the primary frame." *Id.* Plaintiffs also point out that the elements of Claim 12 are not limited to "specific structural shapes" illustrated in the '747 Patent, since "claim elements cannot be restricted to specific embodiments disclosed in the patent specification, even if only one embodiment is disclosed." *Id.* (citations and internal quotations omitted). Plaintiffs also point to the dictionary meaning of "flange" which they submitted to the magistrate judge at the *Markman* hearing: "[a] protruding rim, edge, rib, or collar, as on a wheel or pipe shaft, used to strengthen an object, hold it in place, or attach it to another object." *Id.* at 8. According to Plaintiffs, "[b]ecause the '747 patent flange is not specifically 'a rim, edge, rib, or collar, as on a wheel or a pipe shaft,' and should not be so limited in the context of claim 12, the more appropriate word to use in the Magistrate's construction was 'portion.'" *Id.*

**Memorandum Opinion and Order - Page 11**

As to Defendant's objection that the magistrate judge incorporated functional language, namely, "facilitates attachment of the auxiliary frame to the primary frame," Plaintiffs argue that Defendant's "position exalts form over substance," since the words "secure" and "attach" both mean essentially the same thing in this context. Plaintiffs also argue that the magistrate judge's proposed definition of "flange" to include a so-called "functional element" is consistent with its ordinary meaning, a part used "to strengthen an object, hold it in place, or attach it to another object." *Id.*

Having considered the magistrate judge's findings and conclusions, the parties' legal briefing and applicable law, the court **overrules** Defendant's objections. The court rejects Defendant's selective argument that "portion" impermissibly broadens the scope of "flange." Defendant is relying on one possible embodiment of the claim. The Federal Circuit has cautioned against this approach to claim construction, "even when a specification describes very specific embodiments of the invention or even describes only a single embodiment, unless the specification makes clear that 'the patentee . . . intends for the claims and the embodiments in the specification to be strictly coextensive.'" *JVW Enterprises, Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed. Cir. 2005) (citing *Phillips*, 415 F.3d at 1323); *SRI Int'l v. Matsushita Electric Corp. of America*, 775 F.2d 1107, 1121 n.14 (Fed. Cir. 1985) (en banc) ("Specifications teach. Claims claim. . . . That a specification describes only one embodiment does not require that each claim be limited to that one embodiment."). In any event, the term "portion" used by the magistrate judge in her recommended claim construction tracks Figure 3 very closely. As shown in Figure 3, the flange 23 is the portion of the extension 22 located at its rear end; it extends downward relative to the rest of the extension; and it facilitates attachment of the auxiliary frame to the primary frame.

As to Defendant's objection that the magistrate judge's use of the terms "facilitates attachment of the auxiliary frame to the primary frame," the court agrees with Plaintiffs that Defendant's position exalts form over substance. In the context of the patent, the court can conceive no difference between the words "secure" and "attach." Moreover, the functional language is consistent with the claim language itself, which provides that "the flanges are located behind the studs to further secure the auxiliary frame." '747 Patent, Col. 6 lines 15-16. The court agrees with the magistrate judge that in such a situation, the construction recommended by the court properly "gives meaning to all the terms of the claim[.]" Report and Recommendation at 12 (citing *Terlep v. Brinkmann Corp.*, 418 F.3d 1379, 1384 (Fed. Cir. 2005) (finding that district court's construction of term "clear" as "transparent or having the property of transmitting light without appreciable scattering so that bodies lying beyond are seen clearly" did not impermissibly import a functional limitation, but reflected an appropriate assignment of meaning to the disputed term); *see also Hill-Rom Co., Inc. v. Kinetic Concepts, Inc.*, 209 F.3d 1337, 1341 (Fed. Cir. 2000) (finding that district court's construction of the term "cushion" as "a structure that provides basic support and comfort" did not impermissibly import extraneous functional limitations into claim, because the construction was consistent with the ordinary meaning of the term and the abstract and description of the patent, noting that the objective of the cushion was to provide support).

   2.   ***"each stud is extended over by one of the extensions, and can support that extension to prevent the auxiliary frame from moving downward relative to the primary frame"***

Defendant objects to the magistrate judge's recommended construction of: "*each stud is extended over by one of the extensions, and can support that extension to prevent the auxiliary frame from moving downward relative to the primary frame*." The magistrate judge noted that the parties'

primary dispute concerned whether the court should adopt a construction requiring the primary frame studs to physically contact the extensions in order to provide support for the auxiliary frame. Essentially adopting the Plaintiffs' proposed claim construction, the magistrate judge recommended that this disputed claim element be construed to mean: "at least some portion of each of the extensions reaches above and across the corresponding stud, and is capable, *with or without direct contact*, of maintaining the corresponding extension in position so as to keep it from falling, sinking or slipping and thus prevent the auxiliary frame f[ro]m moving downward relative to the primary frame" Report and Recommendation at 20 (emphasis added).

Defendant argues that the magistrate judge's recommended construction is incorrect because: (1) the patent discloses an embodiment in which the extensions directly contact the studs; (2) reading the claim to cover configurations in which the extensions do not directly contact the top surfaces of the studs requires magnetic attraction not disclosed in the patent; and (3) the patent says that engaging contact between the extensions and studs is part of the invention. Def. Obj. at 4-10.

The court **overrules** Defendant's objections. While the parties appear to agree that the stud can directly contact the extension to provide the claimed support, the dispute concerns whether the claim requirement can be provided by a magnetic support *without direct contact* between the extension and stud. As argued by Plaintiffs, Patent '747, column 3 lines 4 through 9 of the patent specification discloses that magnetic attraction alone may be used to "solidly secure[]" the auxiliary frame to the primary frame. The patent does not state that physical contact between the extension and the upper side of the stud is required for the invention. Moreover, in support of its objection, Defendant points once again to the embodiment of the invention shown in the patent's drawing in the specification, which does show contact. As already stated, the Federal Circuit has cautionned

against this approach to claim construction, "even when a specification describes very specific embodiments of the invention or even describes only a single embodiment, unless the specification makes clear that 'the patentee . . . intends for the claims and the embodiments in the specification to be strictly coextensive.'" *JVW Enterprises*, 424 F.3d at 1324 (citing *Phillips*, 415 F.3d at 1323). Moreover, as the magistrate judge correctly noted, "while Defendant points to a drawing that shows contact, Defendant points to nothing else in the specification, or in Claim 12, indicating that contact between the stud and extension is required." Report and Recommendation at 12.

In addition, as Plaintiffs correctly point out, the patent Abstract, a condensed summary of the invention, provides:

> An eyeglass combination includes a primary frame having a bridge and two side studs. An auxiliary frame includes a bridge and two side extensions each having a rear flange for engaging with the stud and for allowing the auxiliary frame to be secured to a typical primary frame. The rear flanges each *includes a magnet for engaging with another magnet engaged in the studs or for engaging with the studs of magnetic material.*

*See* Ex. 1 to Pl. Resp (cited in Pl. Resp. at 11-12) (Plaintiffs' emphasis).[4] Thus, Defendant's contention that the patent discloses only direct contact is incorrect.

### 3. *"the flanges are located behind the studs to further secure the auxiliary frame to the primary frame"*

Defendant objects to the magistrate judge's proposed construction of this element. As set forth above, the magistrate judge recommended that "*the flanges are located behind the studs to further secure the auxiliary frame to the primary frame*" should be construed as "the flanges are

---

[4]The court rejects Defendant's argument that the magistrate judge relied only on the oral argument of Plaintiffs' counsel at the claim construction hearing to find that physical contact between the extension and the studs was not required. While the magistrate judge did make note in her Report and Recommendation that she found "compelling" Plaintiffs' arguments to support their assertion that the stud and extension need not have contact (*see* Report and Recommendation at 16), her Report and Recommendation makes clear that she considered the parties' written submission, including the patent, joint claim construction statement and parties' briefs. *See id.* at 1, 17.

**Memorandum Opinion and Order - Page 15**

located behind the studs to further secure the auxiliary frame to the primary frame, either through contact or magnetic attraction between the magnetic materials within the flanges and studs." Report and Recommendation at 20. The magistrate judge rejected Defendant's proposed claim construction, namely, that "the flanges are located behind the studs to secure the auxiliary frame to the primary frame in addition to the support provided by the stud and the securing provided by the magnetic force." Under Defendant's proposed construction, the flanges themselves would provide a mechanism for securing the auxiliary frame to the primary frame, which would operate independently of the studs and magnetic materials.

Defendant argues that the magistrate judge's proposed construction is incorrect because: (1) it eliminates the requirement of Claim 12 that flanges "further secure" the auxiliary frame to the primary frame; (2) the patent requires that the flanges contact the studs to "independently" secure the frames together; and (3) the flanges operate independently of the magnetic materials. *See* Def. Obj. at 11-14.

The court **overrules** Defendant's objection. According to Defendant, because Claim 12 already requires that the magnetic materials of the flanges and studs engage to secure the auxiliary frame to the primary frame, "it makes no sense to 'further secure' the frames by 'magnetic attraction between the magnetic materials within the flanges and studs.'" Def. Obj. at 12. The court rejects Defendant's contention that the magistrate judge's recommended construction has the flanges "performing the same function twice." *See id.* The patent discloses that by locating the downwardly extending flanges behind the studs, the flanges provide a "hook means" to further secure the auxiliary frame to the primary frame. '747 Patent, col. 2 lines 61-65. As Plaintiffs correctly argue, "the element the magistrate construed requires the flanges be '**located behind the studs** to further

secure the auxiliary frame to the primary frame.'" Pl. Resp. at 12 (original emphasis). The requirement that the magnetic materials of the flanges and studs secure the frames together does not speak to the location of the flanges with respect to the studs; the magistrate judge's recommended construction concerns the claim element that does speak to **where** the flanges are located relative to the studs to facilitate the back-mounting connection. *Id.* Accordingly, the court rejects Defendant's argument that the magistrate judge's recommended claim construction somehow results in the flanges performing the same function twice.

The court further rejects Defendant's argument as another attempt to read out of the patent the inclusion of magnetic material. The magistrate judge's construction properly reflected her rejection of "Defendant's contention that the mechanism by which the flanges secure the auxiliary frame to the stud of the primary frame is necessarily by contact between the flanges and studs." Report and Recommendation at 19. In support, the magistrate judge noted that Claim 12 indicates that the flanges and studs include magnetic materials, and that it is these magnetic materials, rather than the flanges and studs themselves, that engage to secure the frames. Also, as set forth previously (*see supra*), the magnets in the flanges and studs may engage through magnetic attraction without actual contact. Once again, Defendant does not point to any language in the claim or specification requiring contact.

## IV. Conclusion

For the foregoing reasons, the court **overrules** Defendant's objections to the magistrate judges Report and Recommendation. The court determines that the magistrate judge's findings and conclusions are **correct**. Accordingly, the court **accepts** them as its own. The court, therefore, construes the claim terms "adapted to support"; "extension"; "support"; "supporting"; and "two

sides" in the manner agreed upon by the parties in the November 23, 2005 Joint Claim Construction and Prehearing Statement at 2-3, as follows.

- "*adapted to support*" is construed as "made for the purpose of supporting";
- "*extension*" is construed as "a portion of the auxiliary frame that extends away from and rearwardly of the sides of the frame";
- "*support*" is construed as "holds in position";
- "*supporting*" is construed as "holding in position"; and
- "*two sides*" is construed as "left-hand and right-hand portions of the respective frame."

The court construes the disputed claim terms of the '747 patent as follows:

- "*primary frame*" is construed as "the lens rims (if provided), the nose bridge, the rim locks (if provided); and the studs, each of which includes a magnetic material";
- "*auxiliary frame*" is construed as "the lens rims (if provided); the nose bridge; the extensions; and the first flanges, each of which each includes a magnetic material";
- "*each extension including a rear end having a first flange extended downward*" is construed as "each extension includes a rear end, a portion of which reaches in a downward direction relative to the remaining portions of the extension and facilitates attachment of the auxiliary frame to the primary frame";
- "*stud*" is construed as "those portions of each side of the primary frame which include a magnetic material and extend outwardly of the lenses or lens rims (if provided)";

- *"each stud is extended over by one of the extensions, and can support that extension to prevent the auxiliary frame from moving downward relative to the primary frame"* is construed as "at least some portion of each of the extensions reaches above and across the corresponding stud, and is capable, with or without direct contact, of maintaining the corresponding extension in position so as to keep it from falling, sinking or slipping and thus prevent the auxiliary frame f[ro]m moving downward relative to the primary frame"; and

- *"the flanges are located behind the studs to further secure the auxiliary frame to the primary frame"* is construed as "the flanges are located behind the studs to further secure the auxiliary frame to the primary frame, either through contact or magnetic attraction between the magnetic materials within the flanges and studs."

**It is so ordered** this 27th day of November, 2007.

                                                  Sam A. Lindsay
                                                  United States District Judge